is now in session. Please be seated. Good morning, everyone. We're going to today's very long calendar, as you can see by looking around, and we're going to, um, take the cases up and, um, as they appear on the docket, um, that if you if you I think the cases have been over allocated time. So if you, um, if when you're making your argument, if you made your points, sit down, don't you don't have to fill up all the time because otherwise we're going to be here into the afternoon. So with that said, the first three cases are submitted on the briefs, and we will take up U.S. versus Scovotto. Yes, you may proceed. Good morning, Your Honors. Thank you. May it please the court. James Flynn on behalf of Anthony Scovotto. The district court imposed a 30 year sentence here, driven by its consideration of two offenses for which a required element was never specifically established by the stipulations in the plea agreement. This court's decision last year in Greene says that a district court cannot use pseudo counts like that under Braxton without specifically establishing the interstate nexus element. The government's attempt to dodge that requirement is incompatible with Greene's binding rule, and the district court here therefore erred. The sentence should be set aside, and the case should be remanded for resentencing. So, counsel, if we agree with you, does that necessarily mean the sentence is set aside, or can we consider whether that error was harmless? The court must, of course, consider whether the error was harmless, and it was not harmless here. The district court announced that it would have imposed the same sentence under the different guidelines range, but did not provide the required analysis that this court finds sufficient to affirm a sentence despite an error under that harmless error analysis. So, do we know for sure that she would have calculated, I mean, if she had calculated the guidelines correctly, what would have been the guideline range? Yes, the guidelines range calculated correctly would have been 292 to 365 months. That's a downward shift to 235 months. The guidelines range is 600 months, which was the statutory maximum under the guidelines as calculated by the district court. This is nothing like this court's cases where the guidelines shift by six months, and the court says, well, the district court would have imposed the same sentence. Here, it's essentially a 20-year shift in the guidelines range for which the district court says, oh, it doesn't matter, I would have imposed the same sentence. So, I don't think the government's resort to cases where the shift was negligible or the district court had some independent reason. Here, the district court imposed a roughly 20-year downward variance and then said, had the error been corrected, it would have imposed it within guidelines. But the sentence was within guidelines by five months. The sentence was within that, yes, it would have, under the correctly calculated guidelines, it would have been at the high end of the sentencing range. The correctly calculated, she might have been more in the middle. We just don't know. Correctly calculated, I'm not sure if I'm following, correctly calculated, the range would have capped out at 365. And if the same sentence had been imposed, it would have been, yes, just five months short of the high end. So, it seemed that the district judge was aware of the dispute and the competing ranges that the parties were proposing and made comments to the effect that the sentence was selected only because the government had recommended that sentence, which was well below what pretrial had recommended and that the judge would not have gone lower under either range. So, it seems she was fully aware of the issue and was going to impose the same sentence. So, you're suggesting that's not the case. Why is that? Yes, I agree she was aware of the dispute and I think Your Honor points out an important piece of the analysis, which was that the district court tethered the sentence here to the government's recommendation. The government's recommendation was based on that higher guidelines range of 600 months and the government recommended a massive downward variance to 360 months. And so, if this process were started over with the new guidelines range, we don't know what the government would have recommended. And so, in that sense, the district court, even though it was saying it wasn't sentencing based on the guidelines, it was sentencing based on a number that arose from guidelines analysis. So, if we think about the blank slate the district court would be facing, if we were to correct the error, probation would have a different recommendation. We don't know what that would have been, but probation went with the guidelines recommendation. Under this analysis, if it had gone with the guidelines recommendation or the other analysis, it might have been substantially lower. We don't know what the government would have proposed as a sentence under the correct guidelines. And so, the district court tethering itself to those recommendations under the flawed analysis can't then say, I'm going to tether myself to those recommendations under the corrected guidelines analysis, because we don't know what they would have been. Your Honor, I'll point the court on this point to Dominguez-Caicedo. It's a 2022 decision by this court, 40 F. 4th, 938, pages 963 to 64. There the court dealt with a similar situation where correcting guidelines analysis would have changed a district court's large variance in one direction to a large variance in the other direction. That case was a smaller shift in the guidelines range, but this court said it couldn't be sure that the same sentence would be imposed under the corrected analysis, given the seemingly incongruent variances under those two different scenarios. This court has no other questions on the Green and Braxton issues. I'm happy to talk about substantive unreasonableness for a few minutes. I see I have about a minute and a half left here. There were related flaws in the district court's analysis as a substantive matter. It discarded all the mitigating evidence that Mr. Scavato put forward on bases that are somewhat hard to understand. For example, taking his father's abandonment of his family as a child. District court set that factor aside because it wasn't clear, quote, whether Mr. Scavato's father abandoned the family or whether something happened to him that prevented him from returning. That's ER 39. It's not clear to me what that means or why that would not, why that would diminish the mitigating circumstances of Mr. Scavato being abandoned by his father, whether his father was voluntarily or involuntarily taken away from the family. We see similar either out-of-hand rejections or failure to mention the other factors Mr. Scavato put forward. The death of his grandmother and the grief and loss after that event was not mentioned by the district court. It hand-waved away the letters and support at ER 39. And it essentially declined to consider the care and the toll that caregiving took on Mr. Scavato for his mother. How do we know that the court declined to consider these arguments versus just finding the arguments to be uncompelling? Yes, Your Honor. And I think that is the Thompson error here from this court's decision last year, right, was that instead of finding that these factors deserved little weight, right, the abandonment by his father, the death of his grandmother, which is not what the district court did here. It said there are, quote, there's, quote, nothing mitigating about his history or circumstances. That's ER 39. That is a categorical refusal to take up any of this evidence. It might have been that the district court, you know, had performed the analysis correctly, found these to be of relatively little weight. But instead it engaged to, it refused to engage with this, this factor, the 3553 analysis at all. And that's, that's the mistake Thompson recognized, is over under relying on a factor, weighing it in the wrong direction. That is substantively unreasonable. And if the court has other questions, I will reserve the last two minutes. All right. Thank you, Your Honor. May it please the court. Claire Kelly on behalf of the United States. Good morning. I'll start with that's what we were just discussing. The defense misconstrues the judge's statement regarding there is nothing mitigating about defendant's history or characteristics. This sentence actually comes in the middle of a thorough and careful analysis of all of the mitigating factors and aggravating factors in this case. Of course, the court explicitly addressed in turn each of the factors presented by the defendant and did engage with them. For example, in analyzing the weight that should be afforded the psychological evaluation, the court noted why she had concerns with the methodology used by the psychologist and why she felt that didn't adequately express his risk of recidivism. So it is not the case that there was hand waving or the court simply refused to engage with these factors. Additionally, the court held both possible sentencing guidelines levels, level 40 and level 43 in mind explicitly when engaging with these aggravating and mitigating factors. It noted, for example, how it would treat the additional victims if it were applying the defense's proposed offense level of 40 and that it would weigh towards his history and characteristics. And so it is, as the court in Munez-Camarena instructs, a procedure in which the court does a separate analysis of the two disputed guidelines ranges can render a guidelines calculation error harmless. And that is the case here. I would also urge the court to affirm on the basis or not to need to reach the issue of whether the jurisdictional element is required here. Because, in fact, in this case, the plea agreement established all of the elements, including jurisdiction, for attempted production of child pornography. In this case, defendant... Show me what part of the agreement met the interstate, the element of how the photos were sent. So for attempted child pornography production, the photos do not need to be sent at all. In fact, the photos do not need to be created at all. The attempt is defendant's attempt to employ, use, or persuade the victim to produce these sexually explicit images or videos. And here, given what defendant did admit to in the plea agreement, we can infer that he knew or had reason to know that those photographs would either be produced using materials in interstate commerce or transmitted using materials in interstate commerce. He knew the children were under the age of 18, as he acknowledges, when he contacted them online. And we know that this was a substantial step and that he had intent to commit this crime because he later did ask them to produce these images and they did comply and send them to him. So regardless of how or what means he used to ask them or how they eventually sent them, we can see his actions in contacting them online as this substantial step with the intent to commit the crime. The case is that defendant's sites do not require the court to parse the language of the stipulated facts any further. This case is different than the situation in Braxton. Any reading of the stipulated facts resulted in a missing element, the element of intent. Whether one read the facts to believe the defendant shot at the marshals or at the door that was in front of the marshals, there was no proof of intent to kill there. Here are all readings of these stipulated facts. It's clear that the defendant had reason to know that this interstate commerce element would be met. And in any event, the defendant stipulated to having violated section 2251A subsection E, which encompasses both the actual violation of this offense and the attempt. In paragraph 4E of the plea agreement, the government agreed not to further criminally prosecute defendant for violations of that statute arising out of his conduct as described in the factual basis. The only conduct that this paragraph 4E can refer to is the conduct with the two additional victims. And that's because the remainder of the factual basis just talks about victim MM, who's our primary victim in this case, for the count of conviction. So 4E must be referring to conduct that gives rise to a violation of 2251 that is referring to our additional victims MC and HH here. And I'd just like to bring to the court's attention, shifting a little bit, if the court is considering the Boas case, B-O-S, there's another case that is consistent that's within the circuit as well with allowing for crimes where there's not all of the elements or not the jurisdictional element established to influence the sentence. So United States v. Spielman, S-P-E-E-L-M-A-N, 431 F. 3rd, 1226, which is a 2005 case. That was also a child exploitation case. And the court used a cross-reference instruction in the guidelines, section 2G 2.2 C1, to increase the offense level. And in doing so, it used a crime, simple intrastate possession of child pornography, over which everyone agrees the government did not have federal jurisdiction, to increase the defendant's sentence. And in that case, the court held a district court may base a 2G 2.2 C1 cross-reference on the basis of conduct over which the federal government would lack jurisdiction to prosecute. I think this confirms that the interstate requirement here related to jurisdiction, once the court has jurisdiction over the crime of conviction, we then move on to the seriousness of the crime, and the court can consider crimes over which there is not federal jurisdiction. If the court has no further questions, the hearing is adjourned. Thank you. Mr. Flynn, you have a couple minutes left. Thank you. To quickly hit a couple of those points, on that last one, Spielman, I'm not aware of that case because the government hasn't cited it, but I'm happy to address it if the court would like additional briefing. I would say briefly that the government, in addition to not briefing that issue, has not briefed or argued that there was some other offense committed here. There are no citations to state law in its brief that has not made the move that it's suggesting now to identify some state offense. Similarly, with the argument about attempt, I just flipped through the brief and didn't see that in the government's brief. I think they would have waived it. Even if they have not, attempt still requires an interstate nexus. Didn't he plead guilty to attempt? Excuse me? Didn't he plead guilty to attempt? Attempt to create? Not as to these other offenses. Oh, okay. Yeah. The interstate nexus is lacking the factual basis as to even an attempt crime. There's nothing there indicating the mode in which the pictures would be transmitted or the way they would be created. On paragraph 4E, that's the other part of the plea agreement the government references. I want to note that that is a limitation on what the government can do. It is not a concession of what actually happened or what crimes were violated. If the government were to come to me and charge me with one offense and say, we'll let you plead guilty to this, but we think you committed ten other crimes, it would be very valuable to me to get the government's commitment not to charge me with those other crimes, even if I thought I had a defense or they didn't happen or there was no factual basis for it. That's what we see happening here is the government agreeing not to charge other crimes, not Mr. Escobedo's concession that he did commit such other crimes. And lastly, on substantive unreasonableness, where the government started, it discussed the psychological evaluation about the nature of the offense, but I heard no answers on any of the history or characteristics issues I mentioned. No answer from the government on the district court's consideration of Mr. Escobedo's abandonment, no answer on his mother, no answer on his grandmother, no answer on the letters of support. The district court did not engage meaningfully with those issues. Unless the court has anything else. Thank you, Your Honor. Thank you, counsel. United States v. Escobedo will be submitted.
judges: WARDLAW, BADE, THOMAS